NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES MARK PURCELL, | Civil Action No. 06-cv-2212 (PGS) |
| Plaintiff, | |
| v. | OPINION |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter was brought before the court pursuant to 42 U.S.C. 1382 by Plaintiff James Mark Purcell (Plaintiff), seeking review of the Commissioner of the Social Security Administration's (SSA) denial of Plaintiff's application for Supplemental Security Income Benefits (SSI). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §405(g).

I.

Plaintiff submitted his application to the SSA on January 8, 2004 with an alleged disability onset date of May 1, 2000Law Judge w. In its Initial Disability Determination dated May 4, 2005, the SSA denied Plaintiff's request for a determination of disability. On June 7, 2004 Plaintiff filed a Request for Reconsideration. Upon reconsideration, the SSA again denied his claim on July 14, 2004. A request for a hearing before an Administrative as filed on July 22, 2004 and a hearing was held on September 13, 2005. At the hearing, Plaintiff was represented by his attorney.

On October 31, 2005, Richard L. De Steno, ALJ issued his decision that Plaintiff was not disabled and was therefore not eligible for SSI under Sections 1602 and 1641(a)(3)(A) of the Social Security Act. On March 15, 2006, the appeals council denied Plaintiff's request for review of the ALJ's decision. This instant action was commenced on May 16, 2006.

II.

Plaintiff was born on August 21, 1952. He currently resides in a rooming house in Jersey City. He is a high school graduate with no additional trade or vocational job training. He has a history of drug abuse but has been "clean" since the mid-eighties. His prior work experience includes work as a truck loader and as a lineman for a trucking company. His application for SSI states that he has been receiving welfare payments in the amount $210 per month since January, 2004 and that he is receiving food stamps.

As part of his request for benefits, Plaintiff filed four forms -- an application, an initial disability report, an activities and daily living questionnaire, and pain reports. In these forms, Plaintiff claimed that his illnesses included type 2 diabetes and high blood pressure (R. 54). In addition, he endured back pain which was aching, stabbing, stinging and throbbing (R. 73) and that the pain lasts "all day, but sometimes it stops because of meds." (R. 73). He further stated that "the pain is just aggravating and when I try to do something, it gets worse" and that the pain worsens "because I am on legs all day and pain in legs is caused by diabetes, hbp." (R. 73). In response to the question: What relieves the pain or makes it better, he indicated "if taken all meds, but taking all meds makes me very weak" (R. 74). Plaintiff summed up his activities as "I walk a lot and I like to read, go sit where I can read because it takes my mind off of pain." He frequents the soup kitchen

and shelter for food and medications. (R. 81). He further indicated that he could walk three blocks before stopping and that he rests ten minutes before being able to proceed. (R. 82).

Plaintiff's attorney, Mr. Langton asserted Plaintiff is disabled and unable to work particularly with regard to his insulin dependant diabetes and his "back and legs, he has two bad knees, he has neuropathy in the feet, and he has the back pain as well as the radiating muscle spasms into his legs". (R. 155).

At the hearing held on September 13, 2005 before the Hon. Richard L. De Steno, ALJ, Plaintiff reiterated what he wrote on the forms. He testified that he could not work "because of the lower back pain . . . it is hard for me to, to function . . . if I try to stand too long . . . . the pain is in my legs, the pain is in my back, I can't function . . .." He further said that the pain runs from his back down into both legs, and that it can occur at any given time. He acknowledged that he can walk about two blocks, and he can stand for about half an hour before the pain in his back comes back. Plaintiff commented that he has a "nagging type of pain" in his knees that "go down to my feet," and that he has tingling in his feet (R. 159) He can sit for about 20 minutes before getting pain in his back (R. 160). Plaintiff claimed that he has been insulin dependant since 1997. With regard to his vision, he states that "it comes and goes", and that "a blurriness, you know, and it would hang, it would stay for a few, until I close my eyes or something like that, you know, and open back up." Plaintiff thought that his blurry vision was caused by fluctuating blood sugar. As to his depression, Plaintiff stated "I guess from all of this here, I don't want to be a bother to anybody . . . I just become in a depressed state of mind and I don't want to be bothered, you know?" Socially, he stays in his room watching TV and listening to music by himself most of the time, but his grandchildren visit regularly.

3

There were several hospitalizations noted in the record. On May 5, 1997 Plaintiff was treated at the Jersey City Medical Center. It's records appear to be of little relevance to this case. Plaintiff was involved in a fight, was struck with a stick and a had a laceration on the left side of his head. (R. 119). An x-ray of the cervical spine was taken. No abnormalities were found. In September 2000, Plaintiff was admitted to Greenville Hospital in Jersey City. He was examined in the emergency room with a presenting complaint of generalized weakness that lasted for a week. (R. 107). The doctors notes indicated that Plaintiff had uncontrolled diabetes and sinusitis, and he had not taken his medication for more than a week. (R. 106). At that time, hospital staff found that Plaintiff had a history of diabetes, that his blood sugar level was 600 on admission, and that he was dehydrated. (R. 109). An x-ray exam confirmed the finding of sinusitis. He was treated with fluids and released after several days.

Plaintiff was also examined by several physicians. On January 12, 2004, Dr. Parikh reviewed Plaintiff's case. He found that Plaintiff had chronic obstructive pulmonary disease, diabetes, asthma, lower back pain, depression, and high blood pressure. Dr. Parikh prescribed medications including muscle relaxants, Humilin (diabetes), Elovil (depression), Norasc (hypertension), Diovan (high blood pressure) and Monopril (hypertension). At that time, x-rays of the lumbrosacral spine were normal, but Plaintiff complained of lower back spasms.

In March, 2004, Dr. Abaid Choudry examined Plaintiff at the request of the SSA. Plaintiff reported a medical history of diabetes since 1997 with retinopathy (damage to the blood vessels in the retina) and neuropathy (nerve damage) and hypertension since 2000 (R. at 136). Plaintiff complained of low back pain, tingling in both feet, and dyspnea on exertion. Plaintiff advised Dr. Choudry that he was able to walk two to three blocks before stopping, and can climb two flights of

4

stairs before stopping. Plaintiff indicated that he had blurry vision and the condition fluctuates. Plaintiff's social history includes smoking a pack of cigarettes every three days, occasional alcohol use and intravenous drug use in the 1980s. On physical examination, Dr. Choudry found Plaintiff's vision to be 20/200 in the left eye, and 20/50 in the right eye. His vision was found to be 20/25 when corrected with glasses. He further noted Plaintiff's weight of 155 lbs, height of 67 inches, blood pressure of 130/80, pulse 96 and a normal temperature. He concluded "this is an African American adult male in no apparent distress." Lungs, heart, abdomen, extremities and joints were all normal. He noted that Plaintiff had paraspinal and lumbar muscle spasms. No sensory deficits other than a decreased sensation to pinprick in the feet were noted, and there was no motor deficit. (R. 137). Dr. Coudry's summary of his examination was that Plaintiff was a 52 year old male with type 2 diabetes with probable retinopathy and/or neuropathy, hypertension (possible history of coronary heart disease), and chronic lower back pain of unclear etiology (R. 138). He concludes that "he has a number of chronic medical problems which are unlikely to improve in the near future." (R. 138).

About two months later, Plaintiff underwent a Physical Residual Functional Capacity Assessment which was conducted by Dr. B. Mirti. Dr. Mirti found that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in a 8 hour workday, and sit with normal breaks for a total of about 6 hours in an 8 hour workday. In addition, his ability to push and/or pull was unlimited, but he had occasional postural limitations.

Dr. Mirti found no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations.

On July 22, 2004, Plaintiff had some blood tests performed. It showed that Plaintiff had elevated levels of glucose, proteins, bilirubin, GGT and TIBC.

Based on this record, ALJ De Steno made the following findings of fact:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's diabetes is considered "severe" based on the requirements in the Regulations 20 CFR §416.920(b).

3. The medically determinable impairment does not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has had, at all material times, the residual functional capacity for lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and the full range of light work. The claimant has not had any significant non-exertional limitations.

6. The claimant is unable to perform any of his past relevant work. (20 CFR §416.965).

7. The claimant has been "closely approaching advanced age" at all material times (20 CFR §416.962).

8. The claimant has "a high school education" (20 CFR §416.964).

9. The claimant has no transferable skills or any past relevant work (20 CFR §416.968).

10. Based on an exertional capacity for light work and the claimant's age, education and work experience, Medical-Vocational Rule 202.13, Appendix 2, Subpart P, Regulations No. 4 directs a finding of "non-disabled."

> 11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §416.920(g)).

## IV.

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)a. A review of the Commissioner's final decision by this Court is limited to determining whether the findings and decision of the Administrative Law Judge are supported by substantial evidence. 42 U.S.C. §405(g). *See, Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Further, a reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). In this matter, the Court finds that the decision is based on substantial evidence for the reasons set forth below.

Plaintiff argues that the ALJ's decision is not based on substantial evidence because Plaintiff suffers from "uncontrolled insulin dependant diabetes mellitus" which combined with other ailments requires a finding of disability. ALJ De Steno found Plaintiff's diabetes to be severe; but he concluded it did not meet the criteria set forth in the regulations to warrant a finding of disability. ALJ De Steno opined that Plaintiff's diabetes is not:

> "severe" enough to meet or medically equal, either singly or in combination, of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Specific consideration has been given to the listing in 9.0 for the Endocrine System; however, the claimant does not meet 9.08 as the evidence did not demonstrate the severity of neuropathy, acidosis, or retinitis proliferans required under the listing for diabetes mellitus. (R. 15-16).

There is nothing in the record which indicates that Plaintiff's diabetes is not being controlled with medication, other than the hospital record of Greenville Hospital for the period September 10-13, 2000. The diagnosis for that admission was uncontrolled diabetes and sinusitis. However, the record also indicated that Plaintiff had not taken his medication for more than a week. (R. 106). All the other medical records acknowledge that Plaintiff suffers with diabetes, but it appears to be under control. There is no evidence that his diabetes is uncontrollable.

ALJ De Steno applied Section 9.08 of the Listing of Impairments to determine whether the diabetes in combination with other ailments would warrant a finding of disability. Section 9.08 reads:

> 9.08    Diabetes mellitus. With:
>
> A.      Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
>
> B.      Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pC02 or bicarbonate levels); or
>
> C..     Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

8

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." An impairment that meets only some of the criteria for a listed impairment "no matter how severely does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In this case, the illnesses listed in Section 9.08 are in the alternative, and only one of the conditions must exist. Hence, if one of the Section 9.00 conditions is present, then a finding of disability would have been mandatory because all of the other Section 9 criteria were met according to ALJ De Steno. He wrote:

> Specific consideration has been given to the listing in 9.00 for the Endocrine System; however, the claimant does not meet 9.08 as the evidence does not demonstrate the severity of neuropathy, acidosis or retinitis proliferans required under the listing for diabetes mellitus.
> (Opinion at p. 2)

With regard to retinopathy and/or neuropathy as contained in Section 9.08, Dr. Choudry found Plaintiff's vision to be 20/25 when corrected with eye glasses. Choudry found "this is an African American adult male in no apparent distress." Lungs, heart, abdomen, extremities and joints were all normal. No sensory deficits other than a decreased sensation to pinprick in the feet and there were no motor deficits. (R. 137). Dr. Choudry's findings are substantial evidence upon which ALJ De Steno relied. As noted by Dr. Choudry, there is significant evidence that Plaintiff has back spasms; however, Dr. Mirti opined in his report that such spasms could be treated with medication, and if necessary, physical therapy. Again, this is substantial evidence upon which ALJ De Steno grounded his decision that the criteria in 9.08 was not met. Finally, there is no finding of frequent acidosis because there was no proof or appropriate blood chemical tests entered into evidence.

9

Plaintiff also contends that ALJ De Steno erroneously applied Medical-Vocational Guidelines and failed to order a vocational expert to review Plaintiff's case. The SSA has a five-step process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. §404.1520. Only step five is in question on this appeal. Step five states:

> Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational facts, he is not disabled.

Plaintiff contends that once the sequential evaluation process reaches its fifth and final step, the burden of proof shifts to the Commissioner to show the existence of jobs existing in substantial numbers in the national economy that claimant can perform notwithstanding his reduced residual functional capacity. *Ferguson v. Schweiker*, 765 F. 2d 31, 37 (3d Cir. 1985). The Commissioner may meet this burden by reference to tables promulgated by administrative rule-making so long as the decision is based on exertional requirements. *See, Heckler v. Campbell*, 461 U.S. 458, 468-70, 103 St. Ct. 1952, 1957-1959 (1983); *Wallace v. Secretary*, 722 F. 2d 1150 (3d Cir. 1983); *Burnam v. Schweiker*, 682 F. 2d 456, 458 (3d Cir. 1982). More specifically, Plaintiff contends that the Commissioner strayed from the rules because non-exertional impairments are at play. Accordingly, Plaintiff concludes the Commissioner was required to hire a vocational expert. *Gilliland v. Heckler*, 786 F. 2d 178 (3d Cir. 1986); *Jesurum v. Secretary*, 48 F. 3d 114, 121 (3d Cir. 1995). In this circuit, the law is that an ALJ is not possessed with the requisite vocational information or expertise to determine how or if a non-exertional restriction will affect the claimant's ability to work. *Sykes v. Apfel*, 228 F. 3d. 259, 261 (3d Cir. 2000). In this case, Plaintiff contends that there was no way for the vocational rules, upon which ALJ relied, to "take into account non-exertional impairments

affecting cognition, mood, stress, environment, manipulation abilities, equilibrium, dermatological issues or sensory impairments which have little or nothing to do with an individual's ability to stand, walk, sit or lift and carry weights" (Plaintiff's brief at 12). Despite Plaintiff's protestations, ALJ De Steno addressed Plaintiff's other impairments as follows:

> The doctor listed several impairments which are not established as being severe by objective medical evidence of such impairments. For example, he indicated COPD and asthma, but there is no significant medical evidence of such impairments. The claimant testified extensively at the hearing in response to questions from his attorney and never even implied he suffered from any breathing or pulmonary problems. Although he testified to depression, he conveyed nothing greater than a feeling of sadness at times. Although he complained of back pain, there is no significant evidence of a severe spinal orthopedic impairment.

Those findings are supported by substantial evidence. For example, the reports of Dr. Choudry and Dr. Mirti contradict Plaintiff's testimony. Within ALJ De Steno's opinion, he questions the credibility of Plaintiff. For example, ALJ De Steno concluded that the "evidence as a whole, considering all medical and non-medical elements, does not support the extent of the claimant's subjective complaints" (Opinion at p. 3). In another paragraph, the ALJ concluded "claimant has not had any significant non-exertional limitations." The point is that ALJ De Steno's finding is that there was a lack of proof to establish non-exertional limitations. This is very different from Plaintiff's contention that the ALJ was substituting his judgment for that of a vocational expert. In a nutshell, the ALJ believed plaintiff was exaggerating his symptoms in light of the objective findings of the experts. It appeared to the ALJ that plaintiff's testimony was inconsistent with the reports of doctors Choudry and Mirti. The ALJ found that "although the assertions of pain are reasonable to a limited degree, the overall record does not support them to the debilitating extent

asserted". (Opinion at p. 3). The regulations permit the Commissioner to consider credibility. 20 C.F.R. §404.1529(c). "The credibility of witnesses is quintessentially the province of the" trier of fact." *See, generally, Scully v. U.S. Wats, Inc.*, 238 F. 3d 497, 506 (3d Cir. 2001). The Commissioner has discretion to evaluate the credibility of the Plaintiff's complaints. *Jenkins v. Commissioner*, 2006 U.S. App. Lexis 21295 (3d Cir. 2006). As a result, the Court finds that the use of the grid as found in the Medical-Vocational Guidelines was appropriate in light of the finding that non-exertional items were not supported by the credible evidence. See 20 C.F.R. §404.202.13.

IV.

Finally, Plaintiff contends that the ALJ (a) improperly discounted the findings of the Plaintiff's treating physician contrary to *Allen v. Bowen*, 881 F. 2d 37, 41 (3d Cir. 1989); and (b) failed to adequately set forth the evidence and reasons for his decision contrary to *Cotter v. Harris*, 642 F. 2d 700 (3d Cir. 1981)   Suffice it to say, these contentions lack merit.

Ordinarily, the findings of a treating physician will not be rejected without other adequate medical evidence. Certainly in this case the reports of doctors Choudry and Mirti provide countervailing evidence. *Allen v. Bowen*, 881 F. 2d 37, 41 (3d Cir. 1981). In addition, this point of law may not apply because it has not been adequately established that Dr. Parikh was in fact Plaintiff's treating physician. The record indicates Plaintiff visited Dr. Parikh once in order to determine whether Plaintiff qualified for welfare benefits. Although he prescribed medications at the time, this does not appear sufficient to say that Dr. Parikh was Plaintiff's treating physician in order to warrant any special status under the law.

12

With regard to the sufficiency of the ALJ's opinion, it appears to this Court that the findings of fact are detailed, and the reasons for the decision are logically and clearly presented. As explained above, the opinion details which evidence was given considerable weight, and why other evidence was discounted. The opinion comports with the requirements of *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981). In addition, ALJ De Steno, in his discretion, granted Plaintiff's request to keep the record open for two weeks in order for Plaintiff to submit a medications list. (Opinion at p. 1). Nothing was received. The point is ALJ De Steno conducted an even handed hearing and considered all the evidence.

## Conclusion

Based on the foregoing, this Court affirms the final determination of the Commissioner of Social Security. The appeal is dismissed.

January 22, 2007                                              PETER G. SHERIDAN, U.S.D.J.